IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CASE NO. _____

ADENIKE AJAYI, on behalf of himself and all other similarly situated,

    Plaintiff,

v.

CULA, LLC,

    Defendant.

## CLASS ACTION COMPLAINT

Adenike Ajayi ("Plaintiff") bring this class action on behalf of himself and all others similarly situated, by and through undersigned counsel, and for his Complaint against CULA, LLC ("CULA" or "Defendant") states and alleges as follows:

## NATURE OF THE ACTION

1. The COVID-19 pandemic changed the automobile industry. Historically, automobiles greatly decreased in value the moment a consumer drove them off the lot. Thus, in the event of a total loss caused by an accident or theft, insurance companies would often pay persons who leased cars an amount equal to or less than the amount they owed on their lease. Supply chain issues caused by the pandemic coupled with increased consumer demand changed this equation and thus, for several years, the opposite occurred: persons like Plaintiff who suffered a total loss began receiving checks for *more* than the amounts they owed on their leases. In this common situation, leasing companies such as CULA should have provided leasees with the opportunity, per their standard form contracts, to buy-out their vehicle for the remaining amount owed on the lease and to keep the excess value of the total loss payment. In practice,

1

however, CULA falsely told lessees that it had a right to the entire total loss payment, including the overage. This class action lawsuit seeks to hold CULA accountable for this deceptive and unfair business practice.

2.      This is a class action on behalf of Plaintiff and all other similarly situated claimants who suffered a total loss on their insured, leased vehicles to which CULA was an assignee under the vehicle's motor vehicle lease agreement. After Plaintiff's insurance company declared his vehicle to be a total loss, the insurance company determined that its actual cash value was substantially greater than the debt Plaintiff owed under his lease. Defendant breached Plaintiff's lease agreement by denying Plaintiff his contractual right to buy-out his vehicle after he suffered a total loss. Instead, Defendant unjustly enriched itself of the excess value of Plaintiff's insurance settlement.

3.      Through the foregoing conduct, CULA has breached its contracts with Plaintiff and the Class members, unjustly enriched itself of funds rightly owed to Plaintiff and the Class and committed deceptive practices in violation of CFA. Plaintiff therefore files this lawsuit on behalf of all persons who suffered a total loss on their leased vehicle to which CULA was an assignee and to whom CULA denied the contractual right to buy-out the leased vehicle, instead unjustly enriching itself to excess insurance proceeds under the policies that Plaintiff and the proposed Class members purchased.

## JURISDICTION AND VENUE

4.      Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff is a citizen of New York and the proposed class members are citizens New Jersey, as well as all the states which Defendant services. Defendant is a California Corporation that has its corporate headquarters in San Diego, CA, and, at all

relevant times hereto, Defendant was engaged in the business of marketing and entering motor vehicle lease agreements in the State of New Jersey.

5. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the excess insurance settlement payments that were deceptively and unjustly secured by Defendant), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.

6. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff' claims occurred in this District, and Defendant regularly transacts business in this District.

**PARTIES**

7. Plaintiff Adenike Ajayi resides in and is domiciled in Richmond County, New York. On or about June 22, 2022, he entered into a closed-end motor vehicle lease agreement with Prestige Toyota of Ramsey, located in Ramsey, New Jersey. Prestige Toyota of Ramsey utilizes a standard, form lease provided by CULA which names CULA, as well as the relevant credit union that CULA assists a dealership in finding to actually finance the lease, as assignees. On or about October 23, 2022, Plaintiff was in a car wreck in which his insurer Geico General deemed his vehicle to be a total loss.

8. Defendant CULA, LLC ("CULA") is a California limited liability company and is the self-proclaimed "industry leader" in indirect vehicle leasing in the county. CULA partners with dozens of credit unions and auto dealers to originate and facilitate tens of thousands of auto leases across the United States, including throughout the State of New Jersey.

## FACTUAL ALLEGATIONS

### A. Plaintiff Leases a Vehicle and Enters a Standard Form Lease Drafted by CULA

9. On or around June 22, 2022, Plaintiff entered a closed-end, 39-month retail installment motor vehicle lease agreement with lessor Prestige Toyota of Ramsey ("Prestige") for a new 2022 Toyota RAV4 hybrid. Rather than a stand-alone agreement provided by Prestige, Plaintiff signed a form lease agreement provided by Defendant CULA. **Exhibit A** is the form Lease, and it sets out the terms of Plaintiff's lease, including his options to purchase the vehicle during or at the end of the lease term. The "agreed upon value of the Vehicle" under the lease was $48,572.28.

10. Plaintiff's Lease, as well as the leases of all Class members, are standardized, materially identical form agreements written by Defendant CULA.

11. Under the terms of the agreement, both Visions Federal Credit Union ("Visions FCU"), the credit union financing the lease, and Defendant CULA, a self-proclaimed "indirect lessor" who connects dealerships with credit unions who will provide vehicle financing, were both named assignees under the Lease.

12. In compliance with section 8 of the Lease, Plaintiff purchased a motor vehicle insurance policy covering the leased vehicle from Geico General Insurance Company ("Geico"). Plaintiff and his partner Adeola Ajayi were the named insureds under the policy, with Visions FCU listed as a lienholder for the Toyota RAV4.

13. The Lease provides that "During the term of the Lease, I have the option to purchase the Vehicle for the Lease Balance as described in Paragraph 5, plus a Purchase Options Fee of $450 and applicable official fees and taxes…. Whether I purchase the Vehicle during or at the end of the Lease, the purchase will on an "AS IS, WHERE-IS, AND WITH ALL

4

FAULTS" basis. Ex. A at § 15.

14. The Lease imposes no condition that the Lease is terminated when a lessee suffers a total loss of their leased vehicle.

15. It is a standard term in most motor vehicle lease agreements (including Plaintiff's) that, should the vehicle be in an accident and declared a total loss and the relevant insurer offers a settlement value that is less than the amount due under the lease, the lessee remains liable for the outstanding balance due under the lease. This very situation is the basis for offerings of GAP insurance, an additional insurance package which offers to cover that difference in settlement value from the balance owed to protect the insured lessee from being personally liable for that amount.

16. Beginning in or around 2021, the national car market saw a markedly high increase in pricing for new and used vehicles, in large part due to the pandemic. As a result, many consumers who suffered total-losses saw their market valuations from insurers reflecting a much higher value than would otherwise be the case, including Plaintiff. As a result, rather than the settlement payments being for less than the balance owed on leased vehicles and necessitating GAP insurance payouts, Plaintiff's and the Class members' settlement values from the insurance they secured have consistently exceeded the balance owed on the lease, meaning Plaintiff and the Class members should be enjoying the benefit of a return in the equity they have built under their insurance investment.

17. Accordingly, a lessee such as Plaintiff should be entitled to obtain the entire settlement from the insurer and exercise his option to purchase the vehicle during the term of the lease, pay off the remaining amount owed, and avail himself of the excess equity value of his vehicle at the time of its total loss.

**B. Plaintiff's Vehicle Is Declared a Total Loss and Plaintiff's Insurance Company Determines That the Actual Cash Value is Greater Than the Amount Owed on the Lease, Yet CULA Retains the Excess Funds.**

18. On or about October 23, 2022, Plaintiff was involved in a car wreck and sustained physical damage to his vehicle. On or about November 8, 2022, Plaintiff promptly filed a claim with his insurer who declared his vehicle to be a total loss covered under his insurance policy.

19. On or about November 9, 2022, Geico generated a CCC One market valuation report for the value of his vehicle that had been declared a total loss. The report indicated that the valuation of Plaintiff's insured vehicle at the time of the loss was $57,128.63.

20. On or around November 21, 2022, Plaintiff received a "breakdown" of this total loss settlement with Geico, which indicated that his Net Settlement amount would be the same figure as indicated in the valuation report ($57,128.63).

21. At this time, the remaining balance due under Plaintiff's retail installment motor vehicle lease agreement was $46,578.65. This meant that Plaintiff was entitled to exercise his contractual right to purchase the vehicle, pay the assignees $46,578.66 plus the purchase option fee and applicable fees and taxes, and avail himself of the remaining insurance settlement value.

22. However, on or about November 28, 2022, Plaintiff received an email from Defendant titled "TOTAL LOSS – 021261". In this email, and despite no language in the Lease to support this position, Defendant indicated that CULA would instead be handling Plaintiff's insurance settlement. See Ex. B, CULA Email.

23. The email went on with the following language explaining the processing of the total loss claim:

> If the settlement amount meets or exceeds the entire amount due to the financial institution, CULA will provide your insurance carrier with a Letter of Guarantee and your claim will be settled. The insurance provider will remit payment directly to the financial institution, and they will apply the payment to your lease. If the

primary insurance does not cover the balance due to the financial institution in full and a GAP claim is necessary, your lease agreement does come with GAP coverage included. Once the GAP claim is processed and approved, the Letter of Guarantee will be submitted to the insurance company. CULA will handle this process with our third party GAP insurance company.

*Id*.

24. Bolded and in the center of the email was the following:

**If your primary insurance claim pays more than the balance due to your financial institution, the excess funds belong to CULA as owner of the vehicle and additional insured/loss payee. If you receive any insurance proceeds, please immediately contact CULA at the number or email address provided below for instructions**.

*Id*.

25. Plaintiff was confused by the above statement because as he reviewed his retail installment motor vehicle lease agreement, as well as his insurance policy for the vehicle, the language was pertinently clear that nothing in the terms indicated that CULA was entitled to any excess insurance proceeds, nor was Plaintiff precluded from receiving the settlement funds and exercising his right to purchase his vehicle.

26. Despite having no valid claim to the excess funds from Plaintiff's settlement with his own insurer, on December 1 and 2 of 2022, Plaintiff saw through his Geico mobile app that two checks were issued in his total loss settlement claim. One to Visions FCU, for the remaining balance due under the lease of $46,578.65; and the second, bewilderingly, made out to CULA, LLC for the remaining $10,549.98 of Plaintiff's settlement.

## C. CULA's Deceptive and Unfair Conduct Breached the Lease and Violates New Jersey's Consumer Protection Statute.

27. CULA's deceptive conduct deprived Plaintiff of his contractual right to purchase the vehicle in breach of the Lease.

28. Upon information and belief, Defendant has similarly wrongfully claimed the

7

excess settlement funds beyond its entitlement of numerous other Class members' who suffered total losses to their vehicles which were under materially identical form leases to which Defendant was an assignee.

29. The Lease does not condition that a total loss removes a lessee's right to purchase their vehicle, nor do they permit Defendant to deny this right to unjustly enrich itself of excess settlement funds as a result of favorable market conditions.

30. Pursuant to the same policies and procedures, Defendant wrongfully represented to consumers who had entered motor vehicle lease agreements facilitated through CULA that they were entitled to handle the settlement of total-loss insurance claims and were inherently entitled to any excess settlement amounts.

31. The standard Lease used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. Despite this, Defendant consistently claimed to both the Class members' and their insurers that they had a legal entitlement to any excess funds in the Class members' total loss settlements that were beyond the remaining balance owed on their lease agreements and did so to deceptively deprive lessees of their purchase option.

32. As a result, Defendant has unjustly enriched itself of the excess funds to which Plaintiff and the Class members were entitled.

33. Had Defendant not breached the agreement and deprived Plaintiff of his purchase option, Plaintiff would have exercised this contractual right, paid the amounts owed under the Lease for purchasing a vehicle during the term of the lease, and availed himself of the insurance proceeds from a policy that he had paid for.

34. Plaintiff and each member of the class were damaged by Defendant's breach and the deceptive misrepresentations and conduct that Defendant employed to surreptitiously secure these settlement funds.

35. Were it not for Defendant's deceptive and improper conduct, Plaintiff would have received $10,549.98 to which he was legally entitled.

36. Plaintiff paid all amounts owed and otherwise satisfied all conditions precedent such that his Lease was in effect and operational at all times relevant to this action.

## CLASS ALLEGATIONS

37. Under Federal Rule of Civil Procedure 23, Plaintiff asserts claims for breach of contract, unjust enrichment, and violation of the New Jersey Consumer Fraud Act on behalf of the following class and subclass:

> NATIONAL CLASS: All natural persons in the United State, from the earliest allowable time through the date of resolution of this action, who: 1) entered into a motor vehicle lease agreement to which CULA was an assignee; 2) suffered a total loss to their leased vehicle; 3) received a settlement offer from their insurer which exceeded the remaining balance due under the lease agreement; 4) were deprived of their contractual right to purchase their vehicle and 5) had the excess settlement funds beyond the balance owed under their lease paid to CULA.
>
> NEW JERSEY SUBCLASS: All New Jersey residents, from the earliest allowable time through the date of resolution of this action, who: 1) entered into a motor vehicle lease agreement to which CULA was an assignee; 2) suffered a total loss to their leased vehicle; 3) received a settlement offer from their insurer which exceeded the remaining balance due under the lease agreement; 4) received a materially identical communication from CULA indicating that CULA was entitled to any excess settlement funds; 5) were deprived of their contractual right to purchase their vehicle and 6) had the excess settlement funds beyond the balance owed under their lease paid to CULA.

38. Plaintiff reserves the right to amend or modify the Class definitions.

39. Excluded from the Class are the Defendant, any parent, subsidiary, or control person of the Defendant, as well as the officers and directors of the Defendant and the immediate

family members of any such person. Also excluded is any judge who may preside over this cause of action.

40. **Numerosity (Rule 23(a)(1).** The exact number of the Class, as herein identified and described, is not known, but it is estimated to be in the thousands if not tens of thousands of individuals geographically dispersed around the county. This is due to the fact that, over the last 4 years, CULA has originated hundreds of thousands of leases across the country. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

41. The Class members, which include Plaintiff, are ascertainable and readily identifiable from Defendant's information and records. For example, every Class member would have received the same form letter including CULA's explanation that it was entitled to the excess funds when insurance payments were greater than amounts owed on a lease.

42. **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class and the relief sought is common to the entire class. In particular, the common questions of law and fact include:

   a. Whether Defendant systemically misrepresented its position under its standard lease agreements to consumers as it relates to its entitlements in the case of a total loss to the Class members' leased vehicles;

   b. Whether Plaintiff and the Class members were deprived of their contractual right to purchase their leased vehicles after they suffered a total loss;

   c. Whether Defendant breached the lease agreements by depriving Plaintiff and the Class members their contractual right to purchase their leased vehicles after they suffered a total loss;

    d.        Whether CULA had any legal right (contractual or otherwise) to any excess settlement funds beyond any outstanding balance due under the lease agreement;

    e.        Whether CULA unjustly enriched itself of excess insurance settlement proceeds beyond the amount owed under Plaintiff and the Class members' lease agreements;

    f.        Whether Defendant's misrepresentations, deceptive acts and improper practices violated the New Jersey Consumer Fraud Act;

    g.        Whether Defendant's conduct injured Plaintiff and members of the Class;

    h.        Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

    i.        Whether Plaintiff and members of the Class are entitled to an injunction restraining CULA's future deceptive acts and practices.

43.    **Typicality (Rule 23(a)(3)).** The claims of the Plaintiff, who is representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of CULA giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein. Plaintiff's and Class members' claims are based upon the same legal theories. Plaintiffs suffered the same harm as all class members.

44.    **Adequacy (Rule 23(a)(4)).** The named Plaintiff is the representative party for the Class, and is able to, and will fairly and adequately, protect the interests of the Class. Plaintiff's interests are co-extensive and do not conflict with the interests of the Class. The attorneys for the

Plaintiff and the Class are experienced and capable in complex civil litigation and class actions.

45.     **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate action is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by class members who claims are too small and complex to individually litigate against a large corporate defendant.

46.     **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

47.     **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
BREACH OF CONTRACT

48.     Plaintiff hereby repeats and realleges the allegations in paragraphs 1 through 48, above.

49. This cause of action for breach of contract is asserted on behalf of Plaintiff and members of the National Class.

50. Plaintiff entered in a motor vehicle lease agreement to which Defendant was an assignee.

51. Plaintiff performed all requirements under the motor vehicle lease agreement.

52. Plaintiff then suffered an accident with that leased vehicle to which he made a first party insurance claim. Plaintiff's insurer declared his vehicle a total loss.

53. Plaintiff's motor vehicle lease agreement entitled him to exercise his option to purchase his vehicle during the term of the lease.

54. Defendant deprived Plaintiff of this right.

55. Defendant's conduct breached its contract with Plaintiff.

56. As a result of Defendant's breach, Plaintiff and the Class members have suffered damages and are entitled to sums representing the excess insurance settlement value they would have retained had they been able to exercise their purchase option under their lease agreements, attorneys' fees, and all costs and expenses of litigation.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

57. Plaintiff hereby repeats and realleges the allegations in paragraphs 1 through 48, above.

58. This cause of action for unjust enrichment is asserted on behalf of Plaintiff and members of the National Class and is brought in the alternative to the breach of contract cause of action.

59. Plaintiff and the Class members conferred upon CULA an economic benefit, like the windfall profits resulting from unlawful misrepresentation and coercion of the customers who

surrendered their equity in the insurance proceeds they had paid for to CULA.

60. CULA's benefits resulting from their unlawful and inequitable conduct are economically traceable to denying Plaintiff and the Class member's rights to buy out their lease vehicles after a total loss.

61. The economic benefit consists of receiving more than CULA was other entitled to under the lease agreements through depriving lessees of their right to purchase and realizing the profit from their procurement of insurance. Plaintiff's and the Class members' losses were a direct and proximate result of BMW's unlawful practices.

62. It would be inequitable and unjust for CULA to be permitted to retain any of the unlawful benefits resulting from their deceptive, fraudulent, illegal and inequitable conduct.

63. As alleged herein, CULA has been unjustly enriched because of their wrongful conduct. Accordingly, Plaintiff and the Class members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that have been obtained by CULA because of such business practices, as well as injunctive relief.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

64. Plaintiff hereby repeats and realleges the allegations in paragraphs 1 through 48, above.

65. This cause of action for violations of the New Jersey Consumer Fraud Act is asserted on behalf of Plaintiff and members of the New Jersey Subclass.

66. The CFA, N.J.S.A 56:8-2, prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent

performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby ...

67. The CFA defines "merchandise" as including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

68. At all relevant times, Plaintiff was engaged in the sale of merchandise within the meaning of the CFA, including, but not limited to, motor vehicle lease agreements.

69. In the operation of its business, and during its contractual relationship with Plaintiff and the subclass members, Defendant has engaged in the use of unconscionable commercial practices, deception, false promises and/or misrepresentations.

70. Defendant engaged in unconscionable commercial practices including, but not limited to, the following:

   a. Depriving Plaintiff and the Class members of their option to purchase their lease vehicle after suffering a total loss;

   b. Misrepresenting to Plaintiff and the Class members that CULA was contractually entitled to excess insurance settlement proceeds beyond the balance owed under the lease agreements;

   c. Misrepresenting to Plaintiff and the Class members' insurers that CULA was contractually entitled to excess insurance settlement proceeds beyond the balance owed under the lease agreements;

   d. Procuring and retaining the excess insurance settlement proceeds beyond the balance owed under Plaintiff's and the Class member's lease agreements.

71. Each unconscionable commercial practice, act of deception, and misrepresentation by Defendant constitutes a separate violation under the CFA, N.J.S.A. 56:8-2.

72.  As a result of Defendant's conduct, Plaintiff and the subclass members have been harmed, as explained above.

73.  By reason thereof, Defendant is liable to Plaintiff and the Class members for judgment that Plaintiff's conduct violated the CFA, actual damages, treble damages, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury on all triable issues and seeks judgment as follows:

a)  determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certify the proposed Class for class treatment, appoint Plaintiff as class representative for the Class and subclass, and appoint undersigned counsel as Class Counsel;

b)  enter an order finding that Defendants' actions described herein constitutes breaches of the express terms of its lease agreements, or, alternatively, that is constitutes unjust enrichment;

c)  enter an order finding that Defendants' actions described herein constitute violations of the CFA;

d)  award Plaintiff and members of the Class actual damages and compensatory damages according to proof;

e)  award Plaintiff and the Class restitution and/or disgorgement of Defendant's profits according to proof;

f)  award Plaintiff and members of the New Jersey subclass actual damages and treble damages pursuant to the New Jersey Consumer Fraud Act;

g) award attorneys' fees, costs and expenses as appropriate;

h) enter an injunction restraining Defendants' use of deceptive and unconscionable commercial practices;

i) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

j) award all other forms of relief as this Court deems just and proper.

Dated: July 25, 2023                Respectfully submitted,

/s/ Ari H. Marcus
Ari H. Marcus, Esq.
MARCUS & ZELMAN LLC
701 Cookmane Ave., Suite 300
Asbury Park, NJ 07712
Telephone: (732) 695-3282
Fascimile: (732) 298-6256
Ari@marcuszelman.com

Andrew J. Shamis, Esq.*
**SHAMIS & GENTILE, P.A.**
ashmis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

Adam A. Schwartzbaum, Esq.*
**EDELSBERG LAW, P.A.**
adam@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

*Counsel for Plaintiff and Proposed Class*

*Application for admission *pro hac vice* forthcoming