**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADENIKE AJAYI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CULA, LLC,<br><br>Defendant. | Civil Action No. 23-4014 (JXN)(JBC)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendant CULA, LLC's ("Defendant") motion to dismiss Plaintiff Adenike Ajayi's ("Plaintiff") Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 47.) Plaintiff opposed (ECF No. 51), and Defendant replied (ECF No. 54). Plaintiff and Defendant also submitted supplemental briefs. (ECF Nos. 63, 64, respectively.) The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and the Second Amended Complaint (ECF No. 43) is **DISMISSED *with prejudice***.

## I. BACKGROUND

### A. Statement of Facts

In June 2022, Plaintiff leased a Toyota RAV4 Hybrid ("Car") from a New Jersey car dealership ("Dealership"). (*See* Second Am. Compl. ("SAC") ¶ 16, ECF No. 43.) Visions Federal Credit Union ("Visions") financed the Lease. (*Id.* ¶ 18.) The Lease stated its disclosures were "also

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

made on behalf of [Visions] and on behalf of [Defendant], to whom [the Dealership] intend[s] to assign this Lease."[2] (*See* SAC Ex. B ("Lease") at *2,[3] ECF No. 43-2.) The Lease obligated Plaintiff to insure the Car and designate the lessor as a Loss Payee. (*Id.* § 8(A).) Further, Plaintiff agreed to "appoint [the lessor] as [Plaintiff's] attorney-in-fact to negotiate and settle, and endorse all checks for payments of, any amounts due under the insurance [Plaintiff] is carrying under this Lease." (*Id.* § 8.) The Lease also provided, in bold lettering:

> **In the event of a Total Loss, the difference between the insurance proceeds and the amount due under the terms of the Lease shall be waived if the Lessor receives the insurance proceeds and if the Lessee has paid the deductible and has otherwise complied with all other promises contained in the Lease (including the requirement to maintain the Vehicle and by paying all amounts due under the Lease) and I will have no further liability. If the Vehicle is a Total Loss, the Lease terminates and you have no obligation to replace the Vehicle.**

(*Id.* § 16.) Below that paragraph, the Lease stated that "if [the lessee] agree[s] to a casualty payoff for less than the actual cash value [of the Car] [the lessee] will owe the difference." (*Id.*) The total cost of the Lease was $58,830.00, which was equal to the sum of the amount due at signing, Plaintiff's total monthly payments, the value of the Car at the end of the lease, and the $450 purchase option fee. (*Id.* at *2.)

The Dealership later assigned the Lease to Defendant, who received the Certificate of Title for the Car. (Def.'s Moving Br. Ex. 1 ("Title"), ECF No. 48-1.[4]) The Certificate of Title listed Defendant as the Car's sole owner and Visions as the sole lienholder. (*Id.*)

---

[2] The Lease used "I," "me," and "my" to refer to the lessee; "you" or "your" to refer to the lessor; and "we," "our," and "us" to refer to both the lessee and lessor. (*Id.*) The Court

[3] Pincites preceded by an asterisk (*) refer to CM/ECF pagination.

[4] In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). The Court may also consider any "document *integral to or explicitly relied* upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)). The Certificate of Title is integral to the Second Amended

Unfortunately, Plaintiff got into an accident several months later, and GEICO, Plaintiff's insurer, declared the Car a "total loss." (SAC ¶ 31.) GEICO valued the Car at $57,128.63 at the time of the accident. (*Id.* ¶ 32.) GEICO paid Visions $46,578.65, the balance Plaintiff still owed on the Lease, and paid Defendant the remaining $10,549.98. (*Id.* ¶ 34.)

**B. Procedural History**

Plaintiff, seeking to recover the $10,549.98 GEICO paid Defendant, filed a class action lawsuit against Defendant in July 2023. (*See* Compl., ECF No. 1.) The class consisted of everyone who: (a) leased a vehicle from Defendant, (b) suffered a total loss, (c) received a payment offer from their insurer exceeding the remaining amount due under the lease, and (d) did not receive the excess money because it was paid to Defendant. (*Id.* at 9.) Broadly, Plaintiff argued Defendant was not entitled to keep insurance payouts on total losses exceeding the amount owed on a lease. (*See id.* ¶ 1.) The Complaint included claims for breach of contract, unjust enrichment, and violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2. (*Id.* ¶¶ 48–73.)

Plaintiff amended the Complaint (First Am. Compl., ECF No. 15), and Defendant moved to dismiss (First Mot. to Dismiss, ECF No. 18). The Court granted Defendant's motion and dismissed the Amended Complaint without prejudice. (Op., ECF No. 40.)

The Court first concluded Plaintiff failed to state a claim for breach of contract. (*Id.* at 4–6.) Plaintiff argued (1) she entered a Lease, (2) she performed on the Lease, (3) her insurer declared the Car a total loss, (4) the Lease gave Plaintiff the option to buy the Car, even after the Lease terminated, and (5) Defendant breached the Lease by not allowing Plaintiff to buy the Car, and by keeping the excess insurance money for itself. (Am. Compl. ¶¶ 61–67.) The Court, however, noted

Complaint because it demonstrates the Lease was assigned to Defendant and the Second Amended Complaint explicitly discusses ownership of the Car.

that the Lease terminated if the Car was declared a total loss. (Op. at 4.) So, once GEICO declared the Car a total loss, Plaintiff no longer had the option to purchase it. (*Id.*) Plaintiff, moreover, conceded his right to repurchase the Car ended once the Lease terminated. (*Id.* at 5.) The Court also observed Plaintiff "allege[d] by conclusory language" that she fully performed on the Lease's requirements but failed to specify what those requirements were or how she performed. (*Id.*) Finally, the Court held the Amended Complaint pled no facts showing Plaintiff's communications with GEICO breached the Lease, or that the Lease did not allow Plaintiff to accept the excess funds. (*Id.*)

The Court then dismissed Plaintiff's unjust enrichment claim because Plaintiff did not allege she conferred a benefit on Defendant. (*Id.* at 6.) "Plaintiff argue[d] without authority that [s]he directly benefitted Defendant because it is an assignee of the Lease." (*Id.*) The Court rejected this argument. (*Id.* at 6–7.)

The Court next dismissed Plaintiff's CFA claim because Plaintiff did not plead an ascertainable loss or a causal connection between Defendant's conduct and the loss. (*Id.* at 7–11.) Nor did Plaintiff adequately allege "substantial aggravating circumstances" necessary to plead a CFA claim based on a contract. (*Id.* at 9.)

Thereafter, Plaintiff filed her Second Amended Complaint. (*See* SAC.) The Second Amended Complaint includes causes of action for: breach of fiduciary duty (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); unjust enrichment (Count IV); and violation of the CFA (Count V). (*Id.* ¶¶ 65–132.) Defendant moved to dismiss under Rule 12(b)(6). (Second Mot. Dismiss, ECF No. 47.) Plaintiff opposed (Pl. Opp'n,

ECF No. 51) and Defendant replied (Def.'s Reply, ECF No. 54). The parties also submitted supplemental briefs.[5] (Pl.'s Supp. Br., ECF No. 63; Def.'s Supp. Br., ECF No. 64.)

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere

[5] The Court requested supplemental briefing as to (1) whether the requirements of the Class Action Fairness Act ("CAFA") were met to provide the Court with jurisdiction; (2) whether the economic loss doctrine barred the breach of fiduciary duty claim; and (3) whether Defendant's status as a "loss payee" limits the amount of insurance proceeds recoverable under the Lease. (*See* Mar. 25, 2025 Text Order, ECF No. 62.)

Having reviewed the parties' supplemental briefs, the Court concludes it has jurisdiction under CAFA. CAFA provides courts with jurisdiction over cases where: (1) the amount in controversy exceeds $5,000,000; (2) the parties are "minimally diverse"; and (3) the class has at least 100 members. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)). "The proper test in a CAFA removal action depends on the nature of the jurisdictional facts alleged and whether they are in dispute." *Id.*

Here, the parties agree CAFA is met. First, the parties are minimally diverse. Plaintiff is a New York resident. (*See* SAC ¶ 14.) Defendant, an LLC, is owned by a California corporation and principally does business in California. (*See* Corporate Disclosure Statement, ECF No. 8.) Second, Plaintiff explicitly alleges the class includes thousands of members. (SAC ¶ 57.) Third, Plaintiff alleges the amount of damages likely exceeds $5,000,000. (*Id.* ¶ 12.) "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). It appears this estimate is made in good faith. So, the Court has jurisdiction over this action.

conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

### A. Count I: Breach of Fiduciary Duty

Plaintiff argues that, because the Lease appointed Defendant as Plaintiff's "attorney-in-fact to negotiate and settle and endorse all checks for payments of, any amounts due under the insurance" for the Car, Defendant owed Plaintiff fiduciary duties of care and loyalty. (SAC ¶¶ 68–69.) According to Plaintiff, Defendant breached its fiduciary duties by making GEICO pay Defendant the excess insurance money. (*Id.* ¶ 72.) Defendant replies that the economic loss doctrine bars Plaintiff's fiduciary duty claim. (Def.'s Moving Br. at 9–10, ECF No. 48.) The Court agrees.

New Jersey courts use the economic loss doctrine to keep tort and contract actions separate. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 309 (2002). The distinction is "critical because '[a]ttaching a tort claim to a breach of contract action dramatically alters the rules governing damages.'" *Id.* (quoting Michael Dorff, *Attaching Tort Claims to Contract Actions: An Economic Analysis of Contract*, 28 Seton Hall L. Rev. 390, 406 (1997)). The economic loss doctrine, accordingly, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, 706 F. Supp. 3d 489, 498–49 (D.N.J. 2023) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). The doctrine will not, however, bar a claim that the defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract." *Saltiel*, 170 N.J. at 316.

Breach of fiduciary duty is a tort under New Jersey law. *In re Estate of Lash*, 169 N.J. 20, 27 (2001). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *Id.*

Here, Plaintiff alleges Defendant assumed fiduciary duties to Plaintiff *through the Lease*. (*See* Am. Compl. ¶ 69.) Plaintiff does not allege Defendant's fiduciary duties came from some source independent of the Lease. Nor could she, because "ordinary commercial business transactions" do not give rise to independent fiduciary duties. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 438 (D.N.J. 1998). "Where a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the contract." *Int'l Minerals & Min. Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990). Plaintiff instead seeks to recover in tort a claim arising from a contract. Because the economic loss doctrine bars contract claims dressed up as torts, the Court **grants** Defendant's motion to dismiss Count I.[6] *See Coleman v. Deutsche Bank Nat. Tr. Co.*, No. 15-1080, 2015 WL 2226022, at *4 (D.N.J. May 12, 2015) (dismissing contract-based breach of fiduciary duty claim under economic loss doctrine); *Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, No.

[6] Plaintiff argues the economic loss doctrine does not bar her breach of fiduciary duty claim, citing *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79 (3d Cir. 2001) and *Heartland Payment Sys., LLC v. Carr*, No. 18-9764, 2020 WL 13836621 (D.N.J. Jan. 27, 2020). Neither is persuasive. In *Bohler-Uddeholm*, the Third Circuit applied Pennsylvania's "gist of the action" test to conclude Pennsylvania's economic loss doctrine did not bar a fiduciary duty claim arising between shareholders in a joint venture. 247 F.3d at 104–05. This matter involves New Jersey's economic loss doctrine, the Court is unaware of any New Jersey case applying the "gist of the action" doctrine, and it does not arise between shareholders in a joint venture. *Heartland* concluded that, under Delaware's economic loss doctrine, the "relationship between [a chief executive] and [the company] extended beyond the parameters of those agreements to the fiduciary duty of loyalty all executives owe their corporation as a matter of Delaware law. 2020 WL 13836621, at *9. This case involves neither Delaware law, nor the relationship between a corporation and an officer. In any event, *Heartland* declined to apply Delaware's economic loss doctrine *precisely because* Defendant's duties to his corporation were independent of his contractual relationship with the corporation.

12-7141, 2013 WL 6816394, at *8 (D.N.J. Dec. 23, 2013) (same); *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 678 (D.N.J. 2009) (same).

**B. Count II: Breach of Contract**

To state a claim for breach of contract under New Jersey law, Plaintiff must show (1) the parties entered into a contract; (2) plaintiff did what the contract required them to do; (3) defendant did not do what the contract required them to do; and (4) defendant's breach caused a loss. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016). The Court, in turn, "determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed to do what it promised." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021) (citing *Woytas v. Greenwood Tree Experts, Inc.*, 237 N.J. 501, 512 (2019)). New Jersey courts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances, and the underlying purpose of the contract." *Barila v. Bd. of Educ. of Cliffside Park*, 241 N.J. 595, 615–16 (2020) (quoting *In re County of Atlantic*, 230 N.J. 237, 254 (2017)).

***i. Contract***

Here, the Lease was unquestionably a contract between Plaintiff and Defendant.

***ii. Performance***

The Court previously dismissed the Amended Complaint, in part, because Plaintiff "allege[d] by conclusory language that [s]he 'performed all requirements under the motor vehicle lease agreement,' but d[id] not allege what those requirements are and whether [s]he fully complied." (Op. at 5.) The Second Amended Complaint has the same deficiency: Plaintiff merely asserts she "performed all requirements under the Lease." (SAC ¶ 78.) Absent are any well-pled factual allegations about what the Lease required and how Plaintiff performed.

***iii. Breach***

Plaintiff argues that Defendant, as a Loss Payee under the terms of the Lease, was entitled to insurance proceeds only to the extent of its interest in the Lease, i.e., the amount due under the Lease. (*Id.* ¶ 82.) Thus, Plaintiff argues Defendant breached the Lease when it took insurance proceeds greater than the amount due on the Lease. (*Id.* ¶ 83.)

This dispute requires the Court to interpret the Lease. In interpreting a contract, "courts first look to the plain meaning of the language at issue." *Colony Ins. Co. v. Aspen Specialty Ins. Co.*, 564 F. Supp. 3d 343, 353 (D.N.J. 2021) (quoting *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 229 N.J. 196, 207 (2017)). "[C]ontract terms should be given their plain and ordinary meaning." *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 321 (2019). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." *Quinn v. Quinn*, 225 N.J. 34, 45 (2016). A contract term is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). But the Court will not "torture the language of a contract to create ambiguity." *Sullivan v. Max Spann Real Estate & Auction Co.*, 465 N.J. Super. 243, 265–66 (App. Div. 2020) (quoting *Stiefel v. Bayly, Martin & Fay, Inc.*, 242 N.J. Super. 643, 651 (App. Div. 1990)). Nor will the Court write a better contract than the parties negotiated. *Quinn*, 225 N.J. at 45.

Plaintiff's theory of breach fails because the plain language of the Lease does not limit Defendant's entitlement to insurance proceeds to the balance owed on the Lease. To the contrary, the Lease states that, in the event of a total loss, "if [Plaintiff] agree[s] to a casualty payoff for less than the actual cash value [of the Car] [Plaintiff] will owe the difference." (Lease § 16.) The Lease,

in other words, entitles Defendant to an insurance payoff equal to the value of the Car in the event of a total loss. If Plaintiff accepts a smaller insurance payoff, then they owe Defendant the difference.

Faced with the plain language of the Lease, Plaintiff points to a different provision, which requires Plaintiff to insure the Car and designate Defendant as a "Loss Payee." (Lease § 8(A).) Neither the Lease nor Plaintiff's insurance policy define the term "Loss Payee." (*See* Lease; SAC Ex. 1 ("GEICO Policy"), ECF No. 43-1.) But, as discussed above, contract terms are given their plain and ordinary meaning. *Kernahan*, 236 N.J. at 321. To find the plain meaning of a term, courts may look to general-use and legal dictionaries. *Centennial Plaza Prop, LLC v. Trane U.S. Inc.*, 771 F. Supp. 3d 481, 489 (D.N.J. 2025) (collecting cases). Having surveyed available sources, the Court concludes a loss payee is "[a] person or entity named in an insurance policy . . . to be paid if the insured property suffers a loss." *Loss Payee*, Black's Law Dictionary (12th ed. 2024). *See also* Julia Kagan, *What is a Loss Payee?*, Investopedia, https://www.investopedia.com/terms/l/loss-payee.asp (last updated Oct 3, 2025) ("A loss payee is someone listed on an insurance policy who receives payment if a loss happens.").

Plaintiff, citing a case applying Arizona law, asserts a loss payee is "a mere appointee to receive the proceeds to the extent of his interest." *In re Tower Air, Inc.*, 397 F.3d 191, 203 (3d Cir. 2005) (quoting *Granite State Ins. Co. v. Emps. Mut. Ins. Co.*, 609 P.2d 90, 92 (Ariz. Ct. App. 1980)). Without citing any relevant contract provision or caselaw, Plaintiff argues that the extent of Defendant's interest, as a loss payee, is the amount due on the lease.

Not so. The owner of property has an interest in the full value of that property. *Royal Ins. Co. of Liverpool v. Stinson*, 103 U.S. 25, 29 (1880) ("There is no doubt that the owner of the property had an insurable interest to the extent of the value of the building notwithstanding the

existence of a mortgage on the property of sufficient amount to absorb it."). So, if a loss payee on an insurance policy owns the insured property, they have an insurable interest in the full value of that property. *In re Tower Air, Inc.*, 397 F.3d at 203. Here, Defendant owned the Car. Defendant, not Plaintiff, held the Certificate of Title, which listed Defendant as the owner of the Car. (*See* Certificate of Title.) Defendant, therefore, had an insurable interest in the full value of the Car, not just the amount remaining on the Lease.[7] Consequently, Defendant did not breach the Lease when it accepted the excess insurance money from GEICO. Defendant was entitled to do so.

***iv. Loss***

Plaintiff also failed to show the alleged breach caused a loss. Plaintiff asserts, in conclusory fashion, that she and the class "have suffered damages," but does not specify what those damages are or how they were caused. As stated, Defendant had an insurable interest in the full value of the Car, not just the amount remaining on the Lease. Accordingly, Defendant recovering insurance proceeds it was entitled to did not cause Plaintiff a loss.

Plaintiff's theory of breach fails because the plain language of the Lease does not limit Defendant's entitlement to insurance proceeds to the balance owed on the Lease. Because Plaintiff fails to establish that Defendant breached, or that Plaintiff suffered a loss, the Court **grants** Defendant's motion to dismiss Count II.

**C. Count III: Breach of the Implied Duty of Good Faith and Fair Dealing**

Every contract in New Jersey has an implied covenant of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). "[A] party's performance under a

[7] Plaintiff argues lessors are similar to mortgagees, and because mortgagees can only recover balance due on the mortgage at the time of loss, so can lessors. (SAC ¶ 45.) The analogy fails, however, because lessors are *not* the same as mortgagees. A mortgage is a loan secured by property. *Mortgage*, Black's Law Dictionary (12th ed. 2024). A lease is a contract where the owner of property lets someone else use it. *Lease*, Black's Law Dictionary (12th ed. 2024). New Jersey law, moreover, expressly distinguishes between leases and secured loans. *See* N.J.S.A. 12A:1-203 (Lease distinguished from security interest).

contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). Good faith conduct is conduct that does not "violate community standards of decency, fairness or reasonableness." *Id.* at 245 (quoting *Restatement (Second) of Contracts* § 205 comment a (1981)). "Proof of 'bad motive or intention' is vital to an action for breach of the covenant." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005) (quoting *Wilson*, 168 N.J. at 251). "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" *Id.* (citation omitted).

Plaintiff claims Defendant acted in bad faith by (1) abusing the discretion it had under the Lease, and (2) misrepresented its rights under the Lease. (SAC ¶¶ 96–97.) Neither argument is persuasive.

First, Plaintiff does not adequately allege Defendant abused its discretion. A party to a contract acts in bad faith if it "exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Wilson*, 168 N.J. at 251. The Second Amended Complaint is devoid of any factual content showing Defendant kept the insurance proceeds arbitrarily, unreasonably, or capriciously. Nor does Plaintiff show Defendant sought to prevent Plaintiff "from receiving its reasonably expected fruits under the contract." *Id.* As discussed above, Plaintiff had no reasonable expectation to any excess insurance proceeds. Defendant owned the Car, and the Lease entitled Defendant to its actual cash value if totaled. If Plaintiff accepted an insurance payout less than the "actual cash value" of the Car, then she was required to reimburse Plaintiff the

difference. (Lease § 16.) In sum, the Second Amended Complaint does not plausibly allege Defendant abused its discretion or that Plaintiff reasonably expected excess insurance funds.

Next, Plaintiff does not show Defendant intentionally misrepresented its rights under the Lease. To be sure, a plaintiff can prove bad faith if plaintiff "relies to its detriment on a defendant's intentional misleading assertions." *Brunswick Hills Racquet Club, Inc.*, 182 N.J. at 226. But Defendant's assertions were not misleading. In correspondence with Plaintiff, Defendant stated entitlement to the excess insurance funds. (SAC Ex. 3, ECF No. 43-3.) That is true. Defendant owned the Car and was entitled to its full value. *Stinson*, 103 U.S. at 29.

Because Plaintiff fails to show Defendant acted in bad faith to deprive her of the benefit of the Lease, the Court **grants** Defendant's motion to dismiss Count III.

**D. Count IV: Unjust Enrichment**

Similarly, Plaintiff's unjust enrichment claim lacks merit. First, the nature of Plaintiff's breach of contract claim precludes her unjust enrichment claim. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Goldsmith v. Camden Cnty. Surrogate's Off.*, 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting *Assocs. Com. Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986)). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Id.* (quoting *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 261 N.J. Super. 468, 478 (Law Div. 1992)).

Where, however, there is "an express contract covering the identical subject matter of [a quasi-contract] claim, [a] plaintiff cannot pursue [that] quasi-contractual claim." *SCP Distribs., LLC v. Nicholas Pools Inc.*, No. 22-6721, 2023 WL 6130635, at *5 (D.N.J. Sept. 19, 2023)

(quoting *All Seasons Home Improvement Co. v. Arch Concept Constr., Inc.*, No. 16-0751, 2018 WL 3928787, at *8 (D.N.J. Aug. 16, 2018)).

> It is a "well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject. The parties are bound by their agreement, and there is no ground for implying a promise. It is only when the parties do not agree that the law interposes and raises a promise. When an express contract exists, there must be a rescission of it before the parties will be remitted to the contract which the law implies, in the absence of that agreement which they made for themselves."

*Moser v. Milner Hotels*, 6 N.J. 278, 280–81 (1951) (quoting *Voorhees v. Ex'rs of Woodhull*, 33 N.J.L. 494, 496–97 (E. & A. 1869)). Put differently, where an express contract and quasi-contract claim concern the same subject matter, the quasi-contract claim survives only if the "the enforceability of the express contract is at issue." *SCP Distribs.*, 2023 WL 6130635, at *5. Here, the Lease and Plaintiff's unjust enrichment claim cover the same subject matter—whether Plaintiff is entitled to insurance proceeds under the Lease. The parties, moreover, agree the Lease is enforceable. Accordingly, Plaintiff cannot pursue a claim for unjust enrichment.

Even if the Lease did not bar Plaintiff's unjust enrichment claim, it still fails on the merits. To state a claim for unjust enrichment under New Jersey law, Plaintiff must show "(1) the defendant received a benefit; (2) retention of that benefit without payment would be unjust; (3) the plaintiff expected remuneration; and (4) failure to remit payment unjustly enriched the defendant." *Bellis v. Kelly*, 797 F. Supp. 3d 431, 436–37 (D.N.J. 2025) (quoting *EnviroFinance Grp., LLC v. Env't Barrier Co.*, 440 N.J. Super. 325, 350 (App. Div. 2015)). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). "Thus, it is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant

which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Plaintiff alleges she conferred an economic benefit on Defendant by adding Defendant as a loss payee, and Defendant unjustly enriched itself by keeping the excess insurance money. (SAC ¶¶ 100–09.) The Court, however, notes that loss payee status and money are separate economic benefits. Plaintiff argues she conferred one benefit (loss payee status), and Defendant retained another (excess insurance money). But "[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that *retention of that benefit* without payment would be unjust." *VRG Corp*, 135 N.J. at 554 (emphasis added).

In any event, Plaintiff's assertion that being added as a loss payee is an economic benefit is just as conclusory as it was in the Amended Complaint. (*See* Op. at 6–7.) It is not clear how being a loss payee, by and of itself, was an economic benefit to Defendant. Even if being a loss payee was an economic benefit, Defendant did not retain it. Once the Car was declared a total loss, the Lease ended, and Defendant could no longer retain its loss payee status. To the extent the excess insurance money was an economic benefit to Defendant, Plaintiff did not confer it upon Defendant; GEICO did.[8] Nor was retaining the extra insurance money unjust, because Defendant was entitled to the full value of the Car. Either way, Plaintiff fails to establish that it conferred an economic benefit on Defendant, and that Defendant unjustly retained the same benefit.

[8] Under New Jersey law, "[a] loss payee is not an insured but only a mere appointee [of the insured] who may not recover if the insured has breached any provision of the policy which would prevent recovery by him. If the loss is not payable to the insured, it is not payable to the loss payee." *In re Tri-State Armored Servs., Inc.*, 366 B.R. 326, 345 (D.N.J. 2007) (quoting *Liberty Mutual Fire Ins. Co. v. Kahlaid, Inc.*, 199 N.J. Super. 494, 497 (App. Div. 1985); *See also Rena, Inc. v. Brien*, 310 N.J. Super. 304, 317 (App. Div. 1998).

Because the Lease precludes Plaintiff's unjust enrichment claim, and Plaintiff nevertheless fails to state an unjust enrichment claim, the Court **grants** Defendant's motion to dismiss Count IV.

**E. Count V: CFA**

New Jersey enacted the CFA to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013) (quoting *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271 (1978)). The CFA, accordingly, prohibits:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby

N.J.S.A. 56:8-2. To state a CFA claim, Plaintiff must show "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Harnish*, 931 F. Supp. 2d at 648 (quoting *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007)).

***i. Unlawful Conduct***

Unlawful conduct falls into three categories: "affirmative acts, knowing omissions, and regulation violations." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Affirmative acts include "unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation." *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 598 (App. Div. 1990). When the plaintiff alleges an affirmative act violated the CFA, "intent is not an essential element

and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Id.* at 17–18. However, for an affirmative act to give rise to CFA liability, the act "must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995). "The capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox*, 138 N.J. at 17. Whether an act has the capacity to mislead and stands outside the norm of reasonable business practices are usually jury questions. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009). Nevertheless, courts within this District have "dismissed CFA complaints for failure to state a claim where plaintiffs have failed to allege that the defendant engaged [in] conduct that could be considered misleading within the meaning of the Act." *Id.* at 515 (collecting cases).

A breach of contract can give rise to a CFA claim. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). However, "a breach of warranty, or any breach of contract, is not per se unfair or unconscionable . . . and a breach of warranty alone does not violate a consumer protection statute." *Cox*, 138 N.J. at 18 (quoting *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 25 (App. Div. 1985)). For a breach of contract to violate the CFA, Plaintiff must show "substantial aggravating circumstances . . . in addition to the breach." *Id.*

Here, Plaintiff alleges Defendant (1) affirmatively misrepresented its entitlement to excess insurance funds, and (2) unconscionably retained the excess insurance funds. Both of those claims are rooted in Defendant's alleged breach of the Lease. Plaintiff, therefore, must allege "substantial aggravating circumstances." *Id.* As the Court previously found, Plaintiff does not so allege. At most, Plaintiff argues Defendant's purported breaches of fiduciary duties, the duty of good faith and fair dealing, and unjust enrichment constitute "substantial aggravating circumstances." (*See* Pl.'s Opp'n at 38–39.) But as discussed above, Defendant did not owe Plaintiff fiduciary duties,

act in bad faith, or unjustly enrich itself. Plaintiff's circular reference to its other causes of action do not create substantial aggravating circumstances. In any event, Plaintiff has not plausibly alleged the Lease or Defendant's communications about it had the capacity to mislead an average consumer. As the Court previously found (*see* Op. at 7–11), Plaintiff merely asserts, in conclusory fashion, that Defendant's conduct was unconscionable, which is inadequate to state a CFA claim.

***ii. Ascertainable Loss***

An ascertainable loss is "a prerequisite for a private cause of action" under the CFA. *D'Agostino v. Maldonado*, 216 N.J. 168, 185 (2013) (quoting *Weinberg v. Sprint Corp.*, 173 N.J. 233, 251 (2002)). An ascertainable loss must be "quantifiable or measurable," not "hypothetical or illusory." *Id.* (quoting *Thiedemann*, 183 N.J. at 248). "[E]ither out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle." *Thiedemann*, 183 N.J. at 248. "A consumer suffers an immediate, out-of-pocket loss or expense when an item purchased is essentially unusable for its intended purpose or causes buyers to incur additional costs." *Robey v. SPARC Grp. LLC*, 256 N.J. 541, 556 (2024). "When a consumer claims that there is a difference in value between an item as advertised and the item as delivered, but the item is not worthless, the benefit-of-the-bargain theory of damages is applicable." *Id.* at 556–57. "[A] consumer suffers a benefit-of-the-bargain loss when the consumer receives less than what was bargained for." *Id.* at 557. Under the benefit-of-the-bargain theory, courts examine "what consumers actually received to what they could objectively expect to receive, based on their bargain, to determine whether the allegations were sufficient to show an 'ascertainable loss.'" *Id.* at 558.

Here, Plaintiff asserts, without elaboration, that she suffered a loss. These kinds of "'naked assertion[s]' devoid of 'further factual enhancement'" do not state a claim upon which relief can

be granted. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In any event, Plaintiff failed to show the alleged breach caused a loss. Again, Defendant had an insurable interest in the full value of the Car, not just the amount remaining on the Lease. Accordingly, Defendant recovering insurance proceeds it was entitled to did not cause Plaintiff a loss. Plaintiff has not alleged an out-of-pocket loss because the Car was not unusable, nor did Defendant cause Plaintiff to incur additional costs. *Robey*, 256 N.J. at 556. The benefit-of-the-bargain theory is equally unavailing because, as discussed above, Plaintiff could not reasonably expect to receive any excess insurance proceeds.

As Plaintiff failed to show substantial aggravating circumstances, unlawful conduct, or an ascertainable loss, the Court **grants** Defendant's motion to dismiss Count V.

**F. Leave to Amend**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Amendment is futile if an amended complaint "would fail to state a claim upon which relief could be granted." *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

Counts I (Breach of Fiduciary Duty) and IV (Unjust Enrichment) cannot be amended to state a claim, as the economic loss doctrine bars Count I, and the existence of a valid contract (i.e., the Lease) precludes Count IV. The remaining claims—Count II (Breach of Contract), Count III (Breach of Implied Covenant), and Count V (CFA)—cure none of the deficiencies the Court identified in dismissing the First Amended Complaint. Plaintiff still merely asserts she performed on the Lease,[9] still does not allege "substantial aggravating circumstances" sufficient for CFA

---

[9] (*Compare* Op. at 5 ("Plaintiff alleges by conclusory language that [s]he 'performed all requirements under the motor vehicle lease agreement, but does not allege what those requirements are and whether he fully complied.'"), *with*, First

liability,[10] and still has not pled an ascertainable loss. Plaintiff's Second Amended Complaint repeats and reiterates the deficiencies in her pleadings. The Court concludes a third chance would be futile. *Riboldi v. Warren Cnty. Dep't of Hum. Servs.*, 781 F. App'x 44, 47 (3d Cir. 2019) (denying leave to amend where allegations in complaint and response to motion to dismiss were deficient, and plaintiff "already had two chances to amend his claims."). Accordingly, the Court **dismisses *with prejudice*** the Second Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 47) is **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED: 2/2/2026**

HONORABLE JULIEN XAVIER NEALS
United States District Judge

Am. Compl. ¶ 62 ("Plaintiff performed all requirements under the motor vehicle lease agreement."), *and* SAC ¶ 78 ("Plaintiff performed all requirements under the Lease.").)

[10] (*Compare* Op. at 9 ("Considering the lack of substantial aggravating facts . . . the claim merits dismissal."), *with*, First Am. Compl. ¶ 84, *and* SAC ¶ 118 (pleading nearly identical affirmative acts).)